Good morning. Good morning. May it please the Court, Your Honors. I'm Joel Hansen. This is my son Jonathan. We're partners. And I'm his lawyer today. The issue in this case is whether the exemption from Social Security granted under Section 1402G unconstitutionally discriminates against Mr. Hansen's religious beliefs. I think we need to get an overview of what is happening here. The reason for the exemption from Social Security that's in question in this case, 1402G, is to balance competing interests. On the one hand, you have the Social Security, the government says, we need to have Social Security, we need to take care of people so they're not destitute, and we need to guarantee the fiscal integrity of the Social Security system. On the other hand, you have religions, including the LDS religion, that has beliefs that are against Social Security, saying that that's a sinful or a satanic program. How do you balance these two competing interests? And the way that the 1402G attempts to do that is to say, well, okay, we're going to let you have this religious belief and not be in Social Security if your religion has its own welfare program and if it takes care of people so that they don't become a burden on the public roles when they're not involved in Social Security. Now, the trouble is that the exemption is drawn in such a way that is applied in this case, it discriminates between religions who provide for their people and who don't believe in Social Security. In other words, in this case, we believe that all religions who don't believe in Social Security and who provide for their people should be exempted. And that was the rule that was announced in the Groves case. They kept saying there's no discrimination here, no discrimination here. But the trouble with that is that there was – there is discrimination in this case. In Groves, there wasn't. That didn't come up. The unconstitutionality of the part of the exemption that we're challenging was not talked about in the Groves case. The Church of Jesus Christ of Latter-day Saints does not oppose Social Security, isn't that correct? Well, Your Honor – Can I have a yes or no? Pardon me? Can I have a yes or no? Yes, it does. Oh, it does? Yes. In the brief, we've – You make the argument that at this stage, we shouldn't be looking any further than what's put in front of us in the form of the complaint. And yet, it's not going to take a whole lot of investigation to cause any finder of fact to reach a different conclusion than the one you just offered. I mean, you've offered up bits and pieces of speeches that date back many years, and you've tried to link yourself to a different – or your client to a different religious group in an effort to get over the problem, but it's pretty apparent that the LDS Church does not, in fact, oppose Social Security. So – I'm sorry, Your Honor, but Your Honor may have not have looked at the statement by President Grant, who said that we are opposed to Social Security because it's satanic. That was made in 1936, the same year that Social Security came out. And since that time, there have been several of our apostles who have said, including President Romney and President Benson and President Hinckley, they say these pension programs, living off the government, being idle, are against our religion. And that's not really the question here. The question here is, as we pointed out in our reply brief, is what does Mr. Hansen understand his religion to be? If he has any basis for saying this based on his religion, that's his religion. That's the issue is what he thinks it is. If you look in the Droz case, it says specifically that the Court cannot get into whether or not that's the religious belief. You can't – this Court is not in the business of interpreting scripture is what it says. So if he says this is what I understand my religion to be, then that's all it takes. And he has plenty of reason for that. But that's not what 402G says. You have an argument with regard to the validity of 402G, but at least it appears to be a legitimate question with regard to whether there's qualification of 1402G. And I take your answer to be a suggestion that you're not emphasizing whether you actually qualify with the regulation as written, but you're emphasizing whether the regulation as written can be sustained. Because 402G is pretty clear in terms of requiring some kind of established religion, not simply an individual's belief. Yes. But the – if you read the case law we've cited, Your Honor, it says that if the individual is a member of a church that has a belief or that he believes it has a belief, his understanding of what his belief is is what's important. And he can have that understanding of a belief. Certainly, we've presented evidence to the court that there's plenty of evidence within the LDS church that says if a member reads these things that have been written by the apostles and prophets of our church and says, yeah, that looks to me like Social Security is bad and it's against my religion, then that's what's required. The court can't get into whether or not he believes one thing and somebody else in the LDS church believes another thing. The question is what does he believe based on his belief, based on the official pronouncements of the church. And we presented plenty of evidence that the official pronouncements of the church, beginning in 1936, the same year that the Townsend Act was passed, are that Social Security is bad and that we should depend upon ourselves and upon our church and not upon the government. That's a consistent theme throughout, especially the statements by President Romney and by President Benson that say don't live off the government. Support yourself, and we have this welfare system to back that up. Yes, but that's quite different from paying tax. Pardon me? I mean, accepting benefits is quite different from paying tax. Accepting that is different from paying tax. Yes. Yes. You can oppose a welfare or pension system and say, yes, but I believe that the government may lawfully collect a tax. Right? That's the standard. Has the LDS church taken any anti-tax positions? The LDS church teaches correct principles and lets the people govern themselves is our position. That's the position of the LDS church. They say this is bad. You decide. However, I'm not the question here is whether or not the exemption, and I want to get into that issue. The exemption says you have to both not believe in public insurance or in private insurance. And the part that says you don't believe in private insurance is the issue upon which Judge Dawson in the lower court ruled against Mr. Hanson. He said, well, you don't believe the private insurance is wrong, and therefore you lose. That issue right there is the issue here today, whether or not the court can discriminate in that way. The Amish qualify. The Amish have they have welfare system that takes care of their people. They have a religious belief against Social Security, and they get out of Social Security. The LDS church is the same way in Mr. Hanson's belief, at least, that we have welfare and we don't believe in Social Security. At least he doesn't. His understanding of the church's doctrine is that it doesn't. But we don't get out. So the government is discriminating between the Amish and the LDS people. Amish people get out. LDS people don't. Why not? Because it says, well, you have to have this belief that private insurance is no good either. That sets the government up to discriminating between the religious beliefs of the Amish and the LDS. Otherwise, they're the same. There's only that one exemption. How do you get around the application of the Anti-Injunction Act? We're here asking this Court to state that this law is unconstitutional. We haven't asked for an injunction. If the law is unconstitutional, the government can't enforce it. We haven't asked for an injunction. We've just said, look, we want you to tell us whether or not this law is unconstitutional. Did your complaint allege that your client has paid this tax? The complaint alleges. Can I have a yes or no? Well, no but. I have a no but for you, Your Honor. And the but is this. Tell us what the but is. Okay. I'd be glad to. He applied for the exemption, Your Honor. Okay. He asked, he said to Social Security, I want to be exempt from this. And the Social Security Administration said, no, you can't. So he's not exempt. So he has to pay it. We're partners. He's self-employed. He has to pay. They wouldn't let him out. I think you misunderstand my question. Does the complaint allege that your client has actually paid this tax? Does it? And if, let's assume for the moment that it does not. Okay. At this point in the litigation, doesn't he lack standing to bring this claim? Well, Your Honor, I think the Court can understand that he, that the government has ordered him to pay it. They said you can't get out, so you have to pay. I think that establishes the fact. That's not the question I'm asking. Well, that's the answer I have. Is your complaint deficient because it fails to allege that your client has actually paid this tax? I don't think it's deficient because we have alleged that the government ordered him to pay it, and we're saying that they can't do that because it's unconstitutional. What you're doing is explaining to me, counsel, why he is factually paying it. We're here on a Rule 12b dismissal. Right. We have to look to your complaint. Right. Doesn't a complaint ordinarily, when you're attacking a tax, say that you've paid the tax? Isn't that the consistent law of the land? Well, Your Honor, all I can answer is this, is that it alleges that the government has said that he has to pay the tax, even though he asked to get out. That's the best I can do in answering your question. Yeah. Where in the complaint does it say that? I don't have it here with me, Your Honor. That's what the ---- You don't have the complaint here? That was what was shown in court. And what the complaint said, I applied for an exemption and I was denied. I know it says that. And you're here on a Rule 12b dismissal and you don't have the complaint? Is it in the ---- is it in there? I'm sorry, Your Honor. I don't have it with me. Okay. Does the court not have it in the file? Yes. Of course we do. Okay. The question is, have you sufficiently alleged standing? And I don't see anything in the complaint. There's certainly nothing in the complaint that says you paid the tax, your son's paid the tax. There's nothing in the complaint I can see that says the government has tried to subject him to the tax. So 12b-6, four corners of the complaint, where's the standing? Well, I've explained that, Your Honor. I think the standing comes from the fact that it was demonstrated in the lower court that he's a partner in a law firm and that he applied for a 1402 exemption and it was denied. Therefore, the government has said you have to pay this tax. And he's saying I don't think that I should because of these religious beliefs. I think that raises the question sufficiently. It does raise the question. It's obvious that the government says he has to pay the tax. And he's saying I don't think I should. That raises the question. How much time do I have? You're down to about three and a half minutes. Would you like to save some time for a rebuttal? I would. You can use the time as you wish. I would. I'll save three minutes and 20 seconds for a rebuttal. Thank you for your argument. We'll hear from the Treasury Department at this time. My name is Joan Oppenheimer. I'm the attorney for the United States. The district court never had any jurisdiction over this action, and therefore, it's unnecessary to decide any other issue in this case. In order to bring a suit, there's a requirement of standing. You have to have an actual pecuniary interest in the outcome of the proceeding. Do you have affirmative information that, in fact, plaintiff doesn't have a pecuniary interest? If the problem is purely one of pleading, then plaintiff could seek to amend his complaint. And is there a reason that you think plaintiff couldn't amend the complaint to make the allegation that he's been required to pay the self-employment tax? I have no personal information, one way or another, as to whether he has any outcome. But generally, in addition to the requirement of standing, in the tax area, there's two additional doctrines that come into play. One of them is Declaratory Judgment Act, which says that you can't get a declaratory judgment in a tax matter. That's, I believe, 28 U.S.C. 2202. And there's also Section 7421 of the Internal Revenue Code, which says that no suit to enjoin the assessment or collection of any tax can be brought by any person. So when you put these all together, there's two ways that you challenge a determination with respect to a tax. You either pay the assessed tax in suit for a refund, or you bring an action for redetermination of deficiency in the tax score. So there's never been any allegation that the government has issued a notice of deficiency to the taxpayer that he is liable for the self-employment tax, unlike the case of Droves v. Commissioner, where there was a notice of deficiency issued because he failed to pay the tax and he sued for a refund. When you get a notice of deficiency, one other method is to pay, is to sue for a refund, and that apparently is what happened in the Supreme Court decision of United States v. Lee. You sue for a refund. Roberts. Does the United States have any information that Mr. Hansen has been issued a notice of deficiency? Well, I personally have no information. I don't know if there's some agent somewhere in the United States. I certainly have no such information. Would the absence of such a notice suggest that he has, in fact, paid the tax? We have no information that he has ever paid. In fact, it was recommended when this case was sent over to the government, it was And I imagine that if a notice of deficiency was ever issued, we would know about it. But whether somewhere else in the government, certainly nothing has been communicated to us. But even if one had ever been issued, the proper method of challenging a notice of deficiency is to bring a tax court action or to pay a refund. And there simply is no third choice. Because if you do something else, if you bring this type of suit, what you are doing is, in effect, bringing a suit to restrain assessment, which section 7421 of the Internal Revenue Code prohibits. And basically, his action is a declaratory judgment action. He's bringing an action to have section 1402 declared unconstitutional. And he's also attempting to obtain a declaration that his religious beliefs entitled him to avoid getting a Social Security number. And, of course, the Social Security number is required to be used on tax forms. So, essentially, he's doing what the Declaratory Judgment Act forbids. And he's attempting to obtain a declaratory judgment action. So the district court simply never had any jurisdiction over this case. And it should have been dismissed for lack of jurisdiction. And even though that was not done, the cases are legion that an appellate court is required to examine jurisdiction on appeal. And so this case could simply be dismissed on the grounds of lack of jurisdiction. Sotomayor, let's assume that we conclude otherwise, the panel concludes otherwise, and we do address the merits. What's the government's response to the argument Mr. Hansen makes about less restrictive means, specifically the requirement that he not only oppose public disability benefits, but private as well? Well, the less restrictive means test doesn't apply to the Establishment Clause. As I understand it, he's waived any argument that the free exercise clause of the First Amendment, that Section 1402G violates the free exercise clause of the First Amendment. And he's limiting himself to the Establishment Clause. And there's no less restrictive means requirement in the Establishment Clause test. The Establishment Clause test, as laid down by this Court in Droz, is that the legislation have a valid secular purpose, that the state's primary purpose neither advances nor restricts religion, and that the clause does not foster excessive entanglement with religion. Well, this Court has already held that 1402G in general satisfies it. And as I understand it, the taxpayer makes two challenges that were not addressed in Droz regarding the constitutionality of 1402G. The argument that he made before this Court that it discriminates between the Amish and the LDS church is an argument that is improperly made. Basically, for the first time in his reply brief, he makes the argument that the requirement of public, that the requirement of opposing both public and private insurance discriminates against those who only oppose public insurance. That was made for the first time in his reply brief. It was not made in the district court. It's well settled that arguments that are not made in the district court cannot be made for the first time on appeal. It also was not made in his opening brief. And it's well settled law in virtually all the circuits that an appellant cannot, is required to make his arguments and state his issues in his opening brief because the appellee is entitled to have a chance to respond to them. So any argument that's made for the first time in his reply brief is waived. So it's our position that the argument that the requirement discriminates between those organizations that oppose only private insurance and those that oppose public and private insurance is improperly before this Court. And the only argument that's properly before this Court is his objection that the Section 1402G violates the Establishment Clause. And as to that position, as to that argument, it's our position that the district court correctly held that it did not violate the Establishment Clause. Sotomayor, you told us why, in the government's view, we should not reach the issue. Let's assume we do. I mean, the notion that something raised in a reply brief for the first time constitutes a waiver is a discretionary doctrine. The Court can, especially if it's an issue of law, look to the issue and resolve the issue. Our case law is clear on that point. What's the government's position with regard to whether 1402G's requirement that the opposition not only be to public insurance but to private insurance is not the least restrictive means? Well, I think that, as I understood it, the argument was an Establishment Clause argument. I didn't understand his argument to be addressed to the Free Exercise Clause. And there's no least restrictive means requirement in the Establishment Clause. The only requirement is that the statute has a secular legislative purpose, that the purpose neither advances nor inhibits religion, and that it doesn't foster excessive entanglement with religion. I think all of those would be satisfied here. It's quite clear. Assuming it's a Free Exercise argument, do you have a response? Well, I think one of the requirements of the Free Exercise test is that the statute is narrowly tailored to achieve the government's interests. And I think it satisfies that test because one of the purposes of the statute is to protect the Social Security system. The government has a legitimate interest in a viable Social Security system, and that includes having a number of contributors. The Social Security system, it doesn't only pay to those people who fall within its terms. It collects benefits from some people, many of which who may ultimately not be members, or they don't have enough quarters to qualify, or for some other reason. Well, the statute is narrowly tailored to ensure that not very many people qualify for the exemption, and that that protects the fiscal soundness of the Social Security system. In the Supreme Court case of the United States v. Lee, the Supreme Court said it would be difficult to accommodate the comprehensive Social Security system with myriad exceptions flowing from a wide variety of religious beliefs. So I would submit to this Court if everyone who had some religious objection to Social Security was allowed to, but who did not object to private insurance, such as life insurance or long-term care insurance or some other kind of insurance that would apply for old age, it would wreck the Social Security system. It would enable many people to, and it would destroy the fiscal soundness of the system. The Supreme Court was entitled to take that into account in drafting Section 1402J. So the regulation is narrowly tailored to achieve that objective. Also, the established, it is also our position the taxpayer is wrong in saying that the question is what Hansen believes, not what the LDS Church believes. The statute specifically makes the church's tenets relevant when it says that you only get the exemption if you are a member, if you are an inherent and established church, and by reason of such membership, you're conscientiously objected to public and private insurance, and that the church has established tenets and teachings that are referred to. So it's not Mr. Hansen's personal opinion. Roberts. The statute says that, but it's also true, isn't it, that the plaintiff is trying to challenge some provisions of the statute, to say that some provisions are unconstitutional? Right. He is trying to say that the established tenets clause is unconstitutional. He has waived any challenge under the free exercise clause by failing to raise it in the district court and failing to challenge the district court's determination of waiver in the court of appeals. The clause passes constitutional muster under the establishment clause because the government has a valid secular legislative purpose in requiring the church to have the established tenets. This serves to prevent fraud. Otherwise, anybody could get up and say, well, we are conscientiously objected to Social Security, and it prevents the government from getting excessively entangled in religion. Otherwise, if an individual could just get up and say, well, I'm a member of the church that provides for its members, and I'm conscientiously objected to Social Security, the government would have to get into the bona fides of the taxpayer's particular belief, and it would be excessively entangled in religion, whereas in this particular case, it doesn't. So it's the government's decision that there was no jurisdiction in this case, and even if there was, the district court just correctly dismissed the action. I'd also like to say we served this court with a 28-J letter. I don't know if the court had received it. We haven't. Since the filing of that letter, I've discovered that this court has held that the unconstitutionality of the Religious Freedom Restoration Act doesn't apply to federal action. So apparently, the unconstitutionality of this court's view, the unconstitutionality of that statute would have no effect on this case, which was a federal statute. Roberts. Okay. Thank you for your argument. Mr. Hanson, rebuttal. Just a couple of things, Your Honor. I want to make it clear. Jonathan is not challenging the tax itself. He's challenging the fact that he was denied an exemption from the tax. Well, what's the effect of being denied an exemption? That he has to pay the tax. Well, I mean, isn't that — But he's not saying the tax overall is unconstitutional. He's just saying that I'm not getting the exemption that I deserve because I'm a member of the district. So if you prevail in this, you'll prevent the federal government from collecting tax from your client. Yes. And we'll also prevent the federal government from having to support him because he's waived any benefits. Isn't that what the Anti-Injunction Act — Pardon me? Isn't that what the Anti-Injunction Act says you can't do in court? Well, in other words, what we're saying, if that's the case, Your Honor, then there is no remedy. I'm sure there is. I'm sure there is. Because in the Droz case, that's exactly what happened, is that it went through the tax court first, and then it came to us. Why don't you have a remedy under Droz? He was denied an exemption, and so he said this statute is unconstitutional, and I want the district court to make that determination. The tax court doesn't make constitutional determinations. No, but that was a procedure that was followed in Droz, to take it through the tax court, as the government has suggested. That's true, but that's not — Droz didn't say this is the only procedure. No, but I'm reacting to what you said, is that your son has no remedy. Well, I think the reason we're here is because we think his remedy was to sue in district court because he was challenging the constitutionality of the statute. If he goes to the tax court, they'll say, well, we don't talk about constitutionality here. We just want to know whether you're going to pay the tax. And we've still got the Anti-Injunction Act sitting there, and the provision of the Declaratory Judgment Act that appears to carve out federal tax actions. I mean, I don't think you can answer those objections by the government to whether we have jurisdiction by saying, well, we've got no other remedy, when, in fact, there is another remedy. You just don't want to do that one for some reason. So why isn't the Anti-Injunction Act effective here to bar your action? Well, I'm thinking that when there is a constitutional violation of the First Amendment, that we can go to district court and say this is a constitutional violation. We want a determination of that. But the Anti-Injunction Act doesn't say that you can't enjoin First Amendment violations. It says you can't enjoin the collection of taxes. Yes. And he's not asking them. He's asking the court to say that he's entitled to an exemption. That's what he's asking for. He's not asking you to enjoin the tax. Now, one other point. They keep saying that we waive the argument below. We raise the issue of the private insurance versus public insurance below. That is a free exercise clause argument. And as this Court has pointed out, it isn't the government's choice is not the least restrictive means. They don't have any compelling interest in this case in making sure that somebody doesn't believe in private insurance. There's no reason for the government to have that position. They can't demonstrate. They have the burden to demonstrate that they have a compelling interest, and they have a burden to demonstrate under the Religious Freedom Restoration Act that they are applying their least restrictive means, and they have not demonstrated that. Thank you very much. Thank you for your argument. Thank both sides for their argument. Very interesting case. It's submitted for decision.
judges: Hawkins, Thomas, Clifton